MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANCO US, LLC, | ) |
| Plaintiff, | ) No. 09 C 6416 |
| v. | ) Judge John W. Darrah |
| BRINK'S, INCORPORATED, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Vanco US, LLC, filed a two-count complaint in the Circuit Court of Cook County against Defendant, Brink's, Incorporated, alleging breach of contract and seeking a declaratory judgment. Plaintiff's claims stem from a Packaged Network Solutions Agreement ("Agreement"), wherein Plaintiff promised to build Defendant a managed data network, and Defendant promised to pay Plaintiff for providing and managing the managed data network. Defendant answered Plaintiff's complaint, removed the instant case to federal court on diversity grounds, and filed a counterclaim against Plaintiff.

Plaintiff has moved to dismiss Counts III, IV, V, and VI of Defendant's Counterclaim for failure to state a claim. These counts allege that: Plaintiff violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III); Plaintiff committed fraud and promissory fraud during the contract negotiations with Defendant and during Plaintiff's performance (Count IV); Plaintiff committed conversion (Count V); and Plaintiff was unjustly enriched by failing to pay internet service providers ("ISPs") when Defendant gave money to Plaintiff to pay the ISPs (Count VI).

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*Ashcroft*). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 129 S. Ct. at 1949. Further, the amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). Additionally, determining whether a complaint should survive a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 129 S. Ct. at 1950. To survive a motion to dismiss, the

well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct. *Id.*

Federal Rule of Civil Procedure 9(b) requires that in any averment of fraud, the plaintiff must allege the circumstances of fraud with particularity, although the malice, intent, knowledge, and other mental condition may be averred generally. A complaint alleging fraud must provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal quotations omitted).

## BACKGROUND

The following facts are taken from Defendant's Amended Counterclaim.

Defendant is a global leader in business and security services. As part of its business needs, Defendant required a secondary network that would enable its network to continue to operate in the event of any problem with its primary circuits. Defendant wanted a "turn key" secondary network, where Defendant could turn over responsibility for purchasing, implementing and monitoring the secondary network to a third-party. Plaintiff represented to Defendant that it would be a single source for the procurement, implementation and complete monitoring of Defendant's circuits.

Defendant additionally wanted a third-party that could fully monitor and manage Defendant's network. This included: (a) ensuring that Defendant's circuits were working at all times; (b) notifying Defendant in the event of network outages; and (c) troubleshooting and resolving any network issues. Defendant alleges that Plaintiff stated that it would provide full circuit procurement, provide a timely and completely managed implementation and deployment of the network, manage the interaction with

circuit providers both locally and globally, and provide full monitoring of the network. According to Defendant, Defendant particularly relied upon Plaintiff's representation regarding the nature and quality of Plaintiff's network management component because having a fully managed network would provide an efficient system to Defendant. At all times, Plaintiff reaffirmed to Defendant that it was able to provide "best in class" network management and that Plaintiff's solution was a "perfect fit" for Defendant. During the sales solicitation process, Defendant also alleges that Plaintiff claimed that it had specific advantages in purchasing circuits from available circuit providers due to its position in the telecom industry.

After the project began, it became apparent that Plaintiff was not up for the job. During the course of Plaintiff's performance, Plaintiff failed to perform as it had promised it would. This included Plaintiff's failure to inform Defendant that individual branch locations were without functioning circuits for weeks and occasions on which Defendant informed Plaintiff representatives that the circuits managed by Plaintiff were down.

Plaintiff was unable to timely install circuits; and where Plaintiff was able to install the circuits, there were often delays occasioned by Plaintiff's mistakes. Plaintiff knew it did not have the ability, experience, or financial wherewithal to perform such a task. Plaintiff did not have significant relationships with telecom companies, and Plaintiff did not receive better pricing because of any such relationship.

Finally, Plaintiff gave Defendant network reports showing 100 percent network availability when Plaintiff knew those reports were false, and failed to pay ISPs with money Plaintiff received from Defendant.

## ANALYSIS

### Count IV – Fraud

Defendant's Count IV alleges that Plaintiff committed fraud in statements made to Defendant before the execution of the Agreement, concerning Plaintiff's ability to install and monitor the network and in certain actions done by Plaintiff during its performance. It is undisputed that Illinois law applies.

To survive a motion to dismiss a fraud claim, Defendant must plead the following elements: (1) that Plaintiff made a false statement of material fact, (2) known or believed to be false by Plaintiff, (3) with intent to induce Defendant to act, (4) action by Defendant in reliance on the truth of the statement, and (5) damage to Defendant resulting from such reliance. *Constantino v. Morningstar, Inc.*, 2004 U.S. Dist. LEXIS 6724, at *9 (N.D. Ill. April 14, 2004).

Defendant's allegations with respect to Plaintiff's pre-execution statements are allegations of promissory fraud. "'Promissory fraud' is a false representation of intent concerning future conduct, *i.e.*, a promise to perform a contract where there is no actual intent to do so." *Nese v. Nordict Constr. Servs.*, 2004 U.S. Dist. LEXIS 9494, at *16 (N.D. Ill. May 25, 2004) (*Nese*) (citing *Houben v. Telular Corp.*, 237 F.3d 1066, 1074 (7th Cir. 2000) (*Houben*)). "As a general rule, promissory fraud is not actionable unless the promise is part of a 'scheme' to defraud." *Nese*, 2004 U.S. Dist. LEXIS 9494, at *16 (N.D. Ill. May 25, 2004) (citing *Houben*, 237 F.3d at 1074). Without "specific, objective manifestations of fraudulent intent," there can be no promissory fraud. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F.Supp. 1366, 1369 (N.D. Ill.1985)).

5

Defendant alleges that the following statements made pre-execution of the Agreement by Plaintiff constitute fraud and promissory fraud: (a) Plaintiff could be a single source and vendor for the procurement, implementation and complete monitoring of Defendant's circuits; (b) Plaintiff could provide the "turn key" solution that Defendant required; (c) Plaintiff would receive better prices than Defendant could due to its position in the telecom industry; (d) Plaintiff possessed specialized expertise in the installation and implementation of circuits; and (e) Plaintiff could provide complete network monitoring and issue resolution. Defendant alleges that Plaintiff's performance was grossly deficient in many aspects.

Plaintiff argues that Defendant's claim for fraud and promissory fraud for its statements made pre-execution of the Agreement fails because Defendant cannot show that it relied on statements made before the Agreement was executed. The Agreement contains the following "no reliance" clause:

> 20.11.1. Each of the parties acknowledges that it has not entered into this Agreement in reliance wholly or partly on any statement, representation or warranty made by or on behalf of any other party or parties, other than any expressly set out in this Agreement.
>
> 20.11.2 In the event that, notwithstanding the provisions of Clause 20, any of the parties hereto alleges that it has entered into this Agreement in reliance wholly or partly on any statement, representation or warranty made by or on behalf of any other party or parties hereto, other than any expressly set out in this Agreement and the Schedules (interpreted in accordance with Clause 1,) then all liability (if any and whether arising in contract, tort (including negligence), breach of statutory duty or otherwise howsoever arising) in respect of such representation or warranty is hereby excluded, save to the extent that such representation was made fraudulently.

The Seventh Circuit has held that no-reliance clauses are enforceable in Illinois. *Extra Equipamentos E Exportacao Ltda. v. Case Corp*, 541 F.3d 719, 715 (7th Cir. 2008)

("No-reliance clauses serve a legitimate purpose in closing a loophole in contract law."). "The purpose of the clause is to head off a suit for fraud . . . ." *Id.* Defendant argues that under Illinois law, a no-reliance clause does not bar a case for fraud, particularly fraud in the inducement. However, the cases Defendant cites in opposition to Plaintiff's arguments are no longer controlling law, *Ginsburg v. Bartlett*, 262 Ill. App. 14 (1 Dist. 1931), or concern integration clauses rather than no-reliance clauses, *Security Center, Inc. v. American Tel. & Tel. Co.*, 1995 WL 307267 (N.D. Ill. 1995); *Budget Rent A Car Corp. v. Genesys Software Systems, Inc.*, 1997 WL 201549 (N.D. Ill. 1997). Therefore, because the no-reliance clause is enforceable, Defendant cannot show that it relied on the statements made by Plaintiff before the Agreement was signed. Therefore, the statements made before the Agreement was executed are not actionable as fraud.

Next, Defendant argues that during Plaintiff's performance of the Agreement, Plaintiff committed fraud and promissory fraud because its performance was not as Plaintiff represented to Defendant during the negotiations of the Agreement. These acts of performance that Defendant alleges do not conform with Plaintiff's representations are: (a) Plaintiff did not have the ability to timely and properly install the circuits; (b) where Plaintiff did install the circuits, delays were caused by Plaintiff's use of wrong equipment and Plaintiff's configuration errors; (c) Plaintiff's original design solutions were flawed and had to be re-worked; (d) Plaintiff failed to provide notification to Defendant about non-working circuits; (e) Plaintiff did not have the help desk that it promised it would provide to help Defendant's users solve problems; (f) Plaintiff told Defendant that the network was at 100 percent, even when it was not, to cover up their

incompetence; and (g) Plaintiff failed to pay the ISPs despite the fact that Defendant gave money to Plaintiff to do so.

Plaintiff's inability to timely and properly install the circuits, Plaintiff's original flawed design solutions, Plaintiff's installation of circuits that did not work correctly, and Plaintiff's incompetent help desk are not actionable as fraud as there is no material statement made by Plaintiff that Defendant could rely on during the course of Plaintiff's performance. Furthermore, Defendant's claim that Plaintiff's statements made pre-execution of the Agreement regarding Plaintiff's ability and Plaintiff's subsequent performance under the Agreement constitute promissory fraud also fails because of the no-reliance clause.

Defendant's allegation that Plaintiff failed to pay the ISPs for use of the circuits also fails. Defendant fails to allege that Plaintiff made a statement to Defendant that Plaintiff paid the ISPs and that Plaintiff knew this statement was untrue. Accordingly, an action for fraud and promissory fraud will not lie for Plaintiff's failure to pay the ISPs.

However, Defendant has stated a claim for fraud based on Plaintiff's false performance reports. Defendant alleges that Plaintiff gave Defendant reports stating that the network was at 100 percent, when Plaintiff knew it was not. Defendant also alleges Defendant relied on Plaintiff's representation and that Defendant was injured as a result. These allegations sufficiently state a claim for fraud. Therefore, Plaintiff's Motion to Dismiss Count IV of the Counterclaim is denied.

*Count III – Consumer Fraud and Deceptive Business Practices Act*

Defendant alleges that statements Plaintiff made before the execution of the Agreement and actions Plaintiff took during its performance of the Agreement violated the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"). To state a claim under the ICFA, Defendant must show: (1) a deceptive act or practice by Plaintiff; (2) Plaintiff's intent that Defendant rely on the deception; and (3) that the deception occurred during a course of conduct involving trade or commerce. *Clearing Corp. v. Fin. & Energy Exch., Ltd.*, 2010 U.S. Dist. LEXIS 72429, at *17 (N.D. Ill. July 16, 2010).

As discussed above, the no-reliance clause of the agreement is enforceable and applicable to this claim, as well. Therefore, Plaintiff could not have intended Defendant to rely on the alleged deceptive pre-execution statements.

Plaintiff's actions after the execution of the Agreement – Plaintiff's inability to timely and properly install the circuits, Plaintiff's original flawed design solutions, Plaintiff's installation of circuits that did not work correctly, and Plaintiff's incompetent help desk – are not actionable under the ICFA because, as explained above, Plaintiff's performance of its duties in this regard was not a deceptive act or practice.

However, Defendant has stated a claim for ICFA in regards to Plaintiff's failure to pay the ISPs. Defendant alleged that Plaintiff failed to pay the ISPs, that Defendant believed the ISPs were being paid, and that this deception occurred during the course of trade or commerce.

Finally, Defendant has also stated a claim for ICFA in regards to the network reports that Plaintiff provided to Defendant. Defendant has alleged that Plaintiff gave

9

reports indicating the network was working 100 percent when it was not, that Plaintiff intended that Defendant rely on this report, that Defendant relied on this statement and continued to use Plaintiff for the network, and that the alleged deceptive act was during trade or commerce.

Accordingly, Plaintiff's Motion to Dismiss Defendant's Count III of the Counterclaim is denied.

*Count V – Conversion of Funds*

Count V of Defendant's Counterclaim alleges that Plaintiff converted Defendant's funds that Defendant gave to Plaintiff to pay the ISPs. "To prove conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 229 Ill.2d 104, 127 (2008) (quoting *Cirrincione v. Johnson*, 184 Ill.2d 109, 114 (1998)).

Plaintiff raises three arguments against Defendant's conversion claim. First, Plaintiff argues that the economic-loss doctrine prevents a plaintiff from recovering, in tort, purely monetary loss resulting from the defeated expectations of a commercial bargain. That doctrine is inapplicable here. The Illinois Supreme Court has held that "economic loss" in this context means "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits-without any claim of personal injury or damage to other property as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d

69, 81 (1982) (internal citations and quotations omitted). As the Illinois Supreme Court has explained, the doctrine is intended to prevent the scope of tort law from encroaching on disputes that are best resolved under the principles of contract. *See 2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill.2d 302, 308 (1990) ("the relationships between suppliers and consumers of goods are more appropriately governed by contract law than by tort law," and "the rules of warranty serve to limit the potentially far-reaching consequences that might otherwise result from imposing tort liability for disappointed commercial or consumer expectations"). Plaintiff's alleged pocketing of Defendant's money meant to pay Defendant's ISPs is not the type of "economic loss" contemplated by the doctrine. Plaintiff cites no case in which the doctrine has been used to defeat an allegation of conversion.

Plaintiff next argues that Defendant's conversion claim fails because the money cannot be described as a "specific chattel." However, under Illinois law, "[i]t is no longer necessary that money be specifically earmarked in order to sustain an action for conversion. An action for conversion may also be maintained where the converted funds are capable of being described, identified, or segregated in a specific manner." *Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill.App.3d 996, 1003 (2 Dist. 2004). Here, the funds are capable of being described as those given to Plaintiff to pay ISPs. This is sufficient. *See Id.* (funds identifiable when they were transferred to defendant from an outside source).

Finally, Plaintiff argues that Defendant has not alleged intent. This argument also fails. Defendant has alleged that Plaintiff "wrongfully kept Defendant's money." Amnd. Counterclaim ¶ 74. This allegation is enough to reasonably support an inference that the

failure to use the money to pay the internet service providers was intentional. Therefore, Plaintiff's Motion to Dismiss is denied with respect to Count V of the Counterclaim.

*Count VI – Unjust Enrichment*

Defendant's Count VI alleges that Plaintiff was unjustly enriched when Plaintiff failed to pay the ISPs and instead kept the money that Defendant gave to Plaintiff to do so. Plaintiff argues that Defendant's unjust-enrichment claim must fail because a party to a contract cannot bring a claim for unjust enrichment based on matters within the scope of the contract.

Unjust enrichment is an equitable remedy and is thus only available when there is no adequate remedy at law. *Nesby v. Country Mut. Ins. Co.*, 346 Ill.App.3d 564, 567 (Ill. App. 5th Dist. 2004). Thus, "[w]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Id.* While a party may plead in the alternative (pleading claims for both unjust enrichment and breach of contract), in such cases, the unjust-enrichment claim may not include allegations that an express contract governs the relationship of the parties. *See Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 603 (Ill. App. 1st Dist. 2005) (*Guinn*). Here, Defendant's claim for unjust enrichment expressly incorporates Defendant's earlier allegations as to the existence of a contract. As such, Defendant's unjust-enrichment claim is not properly pled in the alternative and must be dismissed. *See The Sharrow Group v. Zausa Development Corp.*, 2004 WL 2806193, at *3 (N.D. Ill. 2004) (dismissing unjust-enrichment claim that incorporated allegations of an enforceable contract); *Guinn*, 361 Ill.App.3d at 603 (same, citing cases).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Dismiss is denied as to Counts III, IV and V and is granted as to Count VI of Defendant's Counterclaim.

Date: December 14, 2010

JOHN W. DARRAH
United States District Court Judge